# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA

*Plaintiff,*

vs.

LINH SIMMONS,

*Defendant.*

Case No. 19-10112-EFM

## MEMORANDUM AND ORDER

The United States charged Linh Simmons in a 20-Count Superseding Indictment, alleging seven counts of making false representations in violation of 15 U.S.C. § 645(d) and 13 counts of wire fraud. Following the Government's case-in-chief at trial, Simmons made an oral Motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29. The Court granted Defendant's Motion, and the Court now issues this Memorandum and Order to memorialize that ruling.

### I. Factual and Procedural Background

On August 14, 2019, the United States brought criminal charges against Defendant Linh Simmons. Pursuant to the Superseding Indictment, the Government charged Simmons with violating 15 U.S.C. § 645(d) by misrepresenting the status of Millennial Manufacturing Resources, LLC ("Millennial") and Figeac Aero North America, Inc. ("Figeac") as small businesses for the

purpose of obtaining prime contracts awarded pursuant to 15 U.S.C. § 644 (Counts 1–7). Relatedly, the Government charged that Simmons committed wire fraud by improperly submitting applications on Millennial's behalf to obtain contracts that were set-aside for small businesses (Counts 8–20). On February 18, 2020, the Court called the case for trial.

In the Government's case-in-chief, evidence was introduced supporting the following facts. In 2015, Simmons founded Millennial to bid on federal contracts relating to the manufacture of airplane parts. Before bidding on federal contracts, a company is required to register with the System for Award Management ("SAM"), an online application process requiring disclosure of various facts about the company, including its size. For all of the contracts at issue in this case, Millennial used Figeac as a subcontractor, and all subcontractors are also required to be registered in SAM. The Government introduced evidence that on five separate occasions Simmons certified on SAM that Millennial was a small business, and on two other occasions Simmons certified that Figeac was a small business.

From October 2015 to June 2017, Millennial applied for and was awarded 13 government contracts that were designated for small businesses only. The Government's first witness, Jay Roberts, a special agent with the General Service Administration of Inspector General, stated on cross-examination that to obtain these contracts only the prime contractor was required to be a small business; the small business requirement did not apply to any subcontractors used by the prime contractor. Relatedly, Roberts testified that Figeac never bid as the prime contractor on any contracts set aside for small businesses. Figeac's only role was that of a subcontractor to Millennial.

The heart of the Government's allegations in Counts 1–7 is that Simmons failed to disclose Millennial's affiliation with Figeac. While it was undisputed that Millennial qualified as a small

business based on the company's number of employees, the Government alleged that Millennial's affiliation with Figeac disqualified Millennial from applying for contracts that were set aside for small business concerns. The Government alleged that Simmons' failure to disclose Millennial's affiliation with Figeac was an unlawful misrepresentation. Roberts testified that the U.S. Small Business Administration ("SBA") is the agency responsible for determining when two businesses are affiliated for the purpose of bidding on federal contracts set aside for small businesses. If the SBA decisionmaker makes a determination that two businesses are affiliated, the SBA provides notice to both companies. In making that determination, the SBA considers several factors, including ownership, management, previous relationships with or ties to another concern, and contractual relationships. A determination by the SBA of a company's small business status may be appealed to the SBA's Office of Hearings and Appeals ("OHA"), and once administrative remedies are exhausted the company may seek to adjudicate the matter in court if the OHA's decision is unsatisfactory.

The SBA never made a determination that Millennial and Figeac are affiliated. The Government, however, introduced some evidence that the SBA might rely on in making an affiliation determination. Specifically, the Government introduced evidence that Millennial used Figeac almost exclusively as its subcontractor on its federal contracts, that Simmons worked for Figeac as an independent contractor, and that Simmons used or attempted to use Figeac employees to perform work for Millennial. The Government never provided any evidence that Simmons was prompted to disclose these facts when registering with SAM or when bidding on the individual contracts.

At the close of evidence, Simmons orally made a Rule 29 Motion for Judgment of Acquittal on all 20 Counts. Simmons argued that no reasonable juror could find that Simmons

misrepresented Millennial's small business status, that Simmons misrepresented Figeac's small business status for the purpose of obtaining a federal contract set aside for small business, or that Simmons committed wire fraud. After hearing argument from the parties, the Court granted Simmons' Rule 29 Motion. The Court informed the parties that this Memorandum and Order memorializing its decision would follow.

## II. Legal Standard

Under Rule 29 of the Federal Rules of Criminal Procedure, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."[1] "When the court decides a motion for judgment of acquittal, it views the evidence in the light most favorable to the government"[2] to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]

## III. Analysis

### A. Violation of 15 U.S.C. § 645(d) (Counts 1–7)

To convict Simmons of violating 15 U.S.C. § 645(d), the Government must prove: (1) that Simmons certified on SAM that Millennial or Figeac is a qualifying small business, (2) that Simmons made the certification knowing it was false, and (3) that Simmons made the certification for the purpose of obtaining the award of a prime contract set aside for small business concerns.[4]

---

[1] Fed. R. Crim. P. 29(a).

[2] *United States v. Cordry*, 2020 WL 409732, at *2 (D. Kan. 2020) (citing *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999)).

[3] *United States v. Xiang Wang*, 2014 WL 6472857, at *2 (D. Kan. 2014) (emphasis in original) (citation and quotations omitted).

[4] 15 U.S.C. § 645(d)(1)(A).

In Counts 1, 2, 3, 5, and 7, the Government alleged that Simmons misrepresented on SAM that Millennial was a qualifying small business on five different occasions. The Government also alleged that during the SAM registration process, Simmons failed to identify Millennial's affiliation with Figeac. The testimony at trial conclusively showed that Millennial easily qualified for small business status based on the number of employees with the company. The Government's theory that Simmons misrepresented Millennial's small business status, therefore, hinged entirely on Simmons' failure to disclose Millennial's alleged affiliation with Figeac. The Government, after conceding that the SBA never determined that Millennial and Figeac are affiliated, proposed that the question of affiliation should be submitted to the jury, which would determine affiliation weighing the same factors used by the SBA.[5]

The Court deems the Government's proposal to be entirely inconsistent with our system of criminal justice. As an initial matter, the Court has some doubt that it would be appropriate to submit to the jury, as the Government suggested, the standards used by the SBA to determine affiliation. Those standards—found in 13 C.F.R. § 121.103—expressly govern how the SBA determines affiliation. The Court gleans nothing from the regulation suggesting that those standards may be used for any purpose other than for the SBA to make its determination.

But even more importantly: under the Government's position, Simmons should be held criminally liable for failing to disclose an affiliation that had never been found to exist by the authoritative body responsible for making that determination. Had the SBA concluded that Millennial and Figeac are affiliated—and, by extension, provided Millennial notice of the SBA's

---

[5] *See* 13 C.F.R. § 121.103(a)–(h) (explaining, among other things, the different principles and factors the SBA uses to determine affiliation).

affiliation determination— this case would proceed under a very different posture. But those are not our facts. Instead, the Government seeks to impose criminal sanctions against Simmons based on (1) her failure to make an independent predetermination that the SBA might conclude that Millennial and Figeac are affiliated and (2) her failure to proactively disclose that affiliation when certifying Millennial's small business status. The Government makes this argument despite presenting no evidence that Simmons had a duty to disclose that factors exist by which the SBA *might* make an affiliation determination or that she was even provided an opportunity to disclose this information when certifying Millennial's small business status.

Perhaps, based on the evidence the Government presented at trial, the SBA would conclude that Millennial and Figeac are affiliated. And perhaps, if challenged, the SBA's decision would be upheld on appeal by the OHA and the courts. But that is not sufficient to convict Simmons on these charges. Indeed, to expose a person to criminal jeopardy because an administrative body *might* determine that two entities are affiliated, when nobody has made that determination, is an affront to our system of justice. No rational juror could find that Simmons made a misrepresentation by failing to disclose an affiliation that had not yet been deemed to exist by any appropriate authority. Accordingly, the Court grants Simmons' Motion for Judgment of Acquittal on Counts 1, 2, 3, 5, and 7.

With regards to Counts 4 and 6, the Government provided evidence that on two different occasions Simmons misrepresented on SAM that Figeac was a small business. However, the Government's chief witness, Roberts, testified that it was unnecessary for Figeac to be a small business to be the subcontractor to Millennial on any of the contracts Millennial was awarded. Furthermore, the Government provided no evidence that Figeac ever applied for a prime contract that was set aside for a small business. To prove that Simmons violated 15 U.S.C. § 645(d), there

must be sufficient evidence that Simmons certified Figeac as a small business "in order to obtain" a prime contract.[6] This is precisely what the Government alleged in its Superseding Indictment and what the law requires. The Court must conclude, however, that while Simmons' certification of Figeac as a small business was an inaccurate representation, no rational juror could find that this misrepresentation was made in order for Figeac to obtain a prime contract, considering that Figeac never attempted to obtain a prime contract designated for small businesses. Therefore, Simmons' Motion for Judgment of Acquittal on Counts 4 and 6 is granted.

**B.      Wire Fraud (Counts 8–20)**

Finally, the Government alleged that Simmons committed 13 Counts of wire fraud in violation of 18 U.S.C. § 1343, which states in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property *by means of false or fraudulent pretenses, representations, or promises*, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.[7]

A scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises is a specific type of scheme to defraud.[8] Although not all schemes to defraud will necessarily involve affirmative misrepresentations, "a scheme to obtain money by false pretenses, representations or promises focuses [] on the means by which the money is obtained *and particular false pretenses, representations or promises*

---

[6] 15 U.S.C. § 645(d).

[7] 18 U.S.C. § 1343 (emphasis added).

[8] *United States v. Zar*, 790 F.3d 1036, 1050 (10th Cir. 2015).

*must be proved.*"[9] Additionally, those false pretenses, representations, or promises must be material.[10]

In the Superseding Indictment, the Government alleged that Simmons' scheme to defraud involved obtaining money and property by means of materially false pretenses; specifically, the Government alleged that Millennial bid on and was awarded 13 federal contracts that were designated for small businesses only. It was undisputed at trial that Millennial did, in fact, obtain these small business contracts. In response to Simmons' Rule 29 Motion, the Government indicated that Simmons' materially false pretense or misrepresentation was that Millennial was a small business, relying solely on its theory of affiliation discussed in Counts 1–7. The Court inquired of the Government on what basis, if any, the wire fraud charges could survive if the Court held, with respect to Counts 1–7, that Simmons' failure to identify an affiliation between Millennial and Figeac was not a misrepresentation. The Government persisted in arguing that Counts 8–20 could survive independent of Counts 1–7, but the Government provided no reason to support this position other than the alleged affiliation between Figeac and Millennial, which was also an essential part of the Government's theory of the case in Counts 1–7.

The Court disagrees that the wire fraud charges can be submitted to a jury in light of the Court's ruling on the affiliation issue in Counts 1–7. The Government's theory is that Simmons obtained these federal contracts under the false pretense that Millennial qualifies as a small business. But the Government's only basis for arguing that Millennial is not a small business is

---

[9] *United States v. Cochran*, 109 F.3d 660, 664 (10th Cir. 1997) (emphasis added); *see also United States v. Cronic*, 900 F.2d 1511, 1513-14 (10th Cir. 1990), overruled on other grounds by *United States v. Iverson*, 818 F.3d 1015 (10th Cir. 2016).

[10] *Neder v. United States*, 527 U.S. 1, 25 (1999).

the alleged affiliation between Millennial and Figeac.  As the Court stated above, the SBA is responsible for making affiliation determinations and the SBA never adjudicated that Millennial and Figeac are affiliated.  The Court reiterates: no rational juror could find that Simmons made a misrepresentation by failing to disclose an affiliation that had not yet been deemed to exist by any appropriate authority.  Thus, for the same reasons the Court granted Simmons' Motion with regard to Counts 1–7, the Court also grants Simmons' Motion for Judgment of Acquittal on Counts 8–20.

**IT IS THEREFORE ORDERED** that Defendant Linh Simmons' Oral Motion for Judgment of Acquittal on all charges in the Superseding Indictment is **GRANTED**.

**IT IS FURTHER ORDERED** that Simmons is hereby released from all conditions that were imposed on her by the Court pending her trial.

**IT IS SO ORDERED**.

Dated this 26th day of February, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE